## Thurston, Gardner & Co. *v.* Theodore Schroeder & another.

The supreme court has, under ch. 193, sect. 2, of the Rev. Stats., power to entertain a petition of a party erroneously nonsuited by the court of common pleas, filed within one year of the nonsuit, although such nonsuit was not caused by any accident, mistake, or other unforeseen cause, but was deliberately ordered by the common pleas; a party improperly nonsuited by the court, when he had a right to the judgment of the jury on his case, not having had "a full, fair, and impartial trial," in the sense of the statute.

A party aggrieved by the ruling of the court of common pleas in matter of law, and whose

bill of exceptions has been duly allowed by the judge who tried the cause, but has been dismissed by the supreme court because he had neglected to give bond to prosecute his exceptions as required by ch. 192, sect. 17, of the Rev. Stats., may, nevertheless, proceed, for the same cause, by petition for new trial in said court, under ch. 193, sect. 2, of the Rev. Stats.

A petition for a lien under the mechanics' lien law, filed against two persons, as joint contractors for the work done and materials furnished, is not supported by proof that the contract was made by one of them; and in case there be not sufficient evidence that the contract was joint, to be weighed by the jury, may be taken from them and dismissed by the court, as, under like circumstances, a nonsuit may be ordered in an action at law.

PETITION for the new trial of an application for the enforcement of a lien against the Manchester Print Works, in Smithfield, under the mechanics' lien law, for work done and materials furnished by the plaintiffs to Edward P. Patterson and Theodore Schroeder, as joint contractors for the same. The application, which was made before the jurisdiction over this subject was vested in the supreme court by petition in equity, was tried upon the question of lien or no lien, at the December term of the court of common pleas for the county of Providence, 1857, before Mr. Justice *Shearman*, sitting with a jury. At the trial it appeared that the claim of the applicants, who were steam-engine and boiler-makers and machinists, was for the sum of $10,848.54, balance of account, for work and materials done and furnished in the erection of the Manchester Print Works, so called, in the town of Smithfield, and in the fitting of the same with a steam-engine, shafting, piping, gearing, and pulleys, suitable for such an establishment. The work was originally contracted for by the defendant, Schroeder, under a written agreement signed by him and the plaintiffs, and bearing date the 22d day of August, 1855. By a subsequent agreement executed on the third day of November, 1855, by the plaintiffs, Schroeder, and the defendant Patterson, referring to and reciting parts of the former agreement, and that Schroeder has since authorized Patterson to use and occupy the above print works for the term of one or two years, according to the terms of the agreement of Schroeder with one Joseph Smith, the owner of the works, and to place therein and remove therefrom any fixtures at his pleasure, it was agreed, that the plaintiffs should go on and complete their contract with

Schroeder, and that Patterson should give his notes for, and pay the consideration for the same, in the place of Schroeder, as stipulated in the agreement between the plaintiffs and Schroeder ; and that " the engine, shafting, pulleys, and pipes, and all other articles furnished by them (the plaintiffs) in completing the same, together with the value of all the labor bestowed upon the same, shall be the property of the said Patterson from the time of the delivery thereof upon said works and the performance of said labor." The agreement then went on to provide for a renewal of certain notes to be given by Patterson for the work and materials to be furnished under the contract, and to provide that notwithstanding the change thus made, the plaintiffs should retain, as security for Patterson's performance of his contract to pay for their work and materials, a certain mortgage on the personal property of Schroeder, originally given by him to them to secure his payments to them. Between the dates of these two agreements, to wit : on the 30th day of October, 1855, Schroeder, who held the print works under an agreement with Smith, the owner, by virtue of which he was to occupy and to have a right to purchase them upon certain agreed terms, executed a lease of them to Patterson for one year, with a right of renewal in either party upon the same terms for another year, and in the lease stipulated, in substance, that the fixtures and machinery put into the works by Patterson should remain the property of Patterson, and that he should have the privilege of removing them, and that for the reimbursement of any sums advanced by Patterson towards Schroeder's contract with Smith to purchase the works, Patterson should be substituted to all the rights of Schroeder. To this contract between Schroeder and Patterson, Smith, the owner of the works, by a writing of the same date, gave his assent.

The applicants having submitted to the jury at the trial the above agreements, and some deeds not pertinent to the issue, but which merely traced the title to the print works from Patterson to Schroeder prior to the accruing of Smith's title to the same, in proof that Schroeder was a copartner with Patterson at the time they furnished the work and materials, produced testimony to the statements of Benjamin Cozzens, made

previous to Patterson's coming to the works, that Schroeder was going to have some one with him to carry them on, and afterwards, that it was Patterson,— and that the witness, who was one of the applicants, understood that Cozzens was acting for Schroeder and Patterson; also, the testimony of another of the applicants to Schroeder's declarations that Patterson was to be concerned with him, and to have one fourth of the concern and Schroeder the other three fourths,— and testimony that Schroeder gave the orders and directions as the work was going on; and lastly, the testimony of Patterson himself, that after the above contract of October 30, 1855, made by him with Schroeder, he considered himself in the sole possession of the print works, and so remained until his assignment for the benefit of his creditors in 1857; that Schroeder and himself were not actually copartners from said 30th day of October, 1855, but were, by their agreement, to be copartners from the time that Schroeder should settle his debts, and that the witness might have said to one of the applicants that Schroeder was interested in the profits from said 30th of October, and now supposed, that if there had been any profits, Schroeder would have claimed three quarters of them, but that, in fact, there was no understanding or contract about it, other than that Schroeder was to be manager of the works at a salary, and was to be a copartner with the witness when his debts were settled, taking an interest of three quarters of the concern.

The applicants having rested their case, the respondents, without producing any evidence, moved that the applicants should become nonsuit, or the petition be dismissed, because, in substance,— 1st, Smith, the principal owner of the works, against which the lien was sought to be enforced, was not notified and had not appeared to the same; 2d, because the applicants, pursuing upon a joint contract of Patterson and Schroeder, had by their written evidence shown only a several contract with Patterson, which their parol evidence had no tendency to vary; 3d, because the applicants had shown no title or interest in Schroeder to the articles furnished by them, or to the real estate upon which they were placed, but that he had no interest in either; and that Patterson had no interest in

the real estate except an assignment of a lease, under which he had wholly ceased to act or possess before the commencement of this process or his default in paying the notes given for the work and materials ; and that the parol evidence introduced by the applicants had no tendency to prove any joint interest of Schroeder and Patterson in the articles furnished by the applicants, or in the real estate against which they sought to enforce their lien ; and, lastly, because neither the notice filed in the town clerk's office, nor the petition, contained " the particular description," required by the 7th and 9th sections of the lien law, of the buildings, improvements, and lands, and of " the estate and title in the same," upon which the applicants claim a lien, and " to whose estate therein the account or demand referred," and what was stated therein concerning " what and whose estate therein " the lien was claimed upon, was shown by the applicants to be untrue.

The court having, upon this motion, dismissed the application, the applicants excepted, and procured an allowance of a bill of exceptions stating substantially the above facts, in order that the questions of law arising thereon might be taken to the supreme court for consideration and judgment. The copy and bill of exceptions were duly filed with the clerk of this court at the March term at Providence, 1858, but no bond to prosecute the appeal by way of writ of error having been filed, as required by chapter 192, sect. 17, of the Revised Statutes, this court, upon motion of the respondents, dismissed the bill of exceptions. The applicants, thereupon, at the same term, filed in this court this petition for a new trial, alleging as grounds thereof the matter of their bill of exceptions, and as an excuse for not giving bond as aforesaid when they carried up their exceptions, that, as their attorney swore, he had overlooked the change made as he alleged by the Revised Statutes, in requiring such bond.

This petition was submitted to the court upon written arguments.

*Thurston*, for the petitioners.

*Cozzens*, for the respondents.

BRAYTON, J. The first objection made by the respondents in

this case is, that the court has no power to grant the petition, — that there are but two classes of cases in which a new trial can be granted by the court, into neither of which does this case fall; that the statute gives the court power to grant new trials, *first*, where by reason of accident, mistake, or any unforeseen cause judgment has been rendered in such suit, on discontinuance, nonsuit, default, or report of referees, or, that such party or garnishee had not a full, fair, and impartial trial in such suit; and, *secondly*, where there has been a trial by jury, a new trial may be granted for such reasons as new trials are usually granted at common law.

The petitioners say, that the judgment of nonsuit in this case was not rendered by reason of any accident, mistake, or unforeseen cause, but was rendered, after a full hearing and argument of the questions determined, and that there has been no trial by jury.

For the purpose of determining the question here raised by the respondents, we must assume that though the judge conducted fairly and impartially, yet that the nonsuit was erroneously ordered, and the petitioners ought rightfully to have gone to the jury upon the testimony in the cause; that there was evidence for them to weigh and consider; and that the petitioners had the right to their judgment upon it. Whether there was such error, must be the subject of inquiry upon the merits of this petition. The question now is of jurisdiction.

It cannot be said that by reason of any accident, mistake, or any unforeseen cause the nonsuit was ordered; but this is not the only cause why a new trial should be granted in a case where there has been no trial by jury. In every case in which it shall be made to appear that the party petitioning has not had a full, fair, and impartial trial, the statute empowers the court to grant a trial, or new trial, as the case requires. To arrive at the conclusion, that no trial can be granted in case of nonsuit, unless it be shown that the nonsuit has been rendered by reason of accident, mistake, or unforeseen cause, it would be necessary at the same time to conclude, that in every such case the party has had a full and fair trial of his cause. What is a full and fair trial, in the sense of this statute,

when a party has the right to submit his cause to a jury, and has evidence which they alone have a right to weigh, and upon which the court has no right to pass judgment? Can the party be properly said to have had a full and fair trial when he has been deprived of all opportunity of obtaining, upon the facts of his case, the judgment of a jury, to whose verdict he has a right? Has he a full trial without this? We think he has not. A full and fair trial must mean a full trial, fairly conducted before the tribunal before which he has the right to go; and if that tribunal be the jury, he is deprived of a full and fair trial unless he is allowed to submit his case to their determination. It matters not in such case, that the party has been fairly, fully, and impartially heard by the judge upon the question whether his cause shall be submitted to the jury, if, under the law, he had a right so to submit it. In either case, the result is the same. The party is equally cut off from a full trial, by an honest error, as by a partial judgment.

The judge who heard this cause was of opinion that there was no evidence to go to the jury, — none which the jury could properly consider; that the petitioners had not made out a *primâ facie* case. If he was right in this, the petitioners have no ground of complaint; for in that event, they have had all the trial which the law contemplates they should have. If, on the other hand, the judge was wrong, he has deprived them of their right of further trial before the jury.

Another objection urged against the consideration of the merits of this petition, and against the relief prayed for, is, that as the petitioners filed these exceptions in the court below, which were regularly allowed by the judge, but which they neglected to prosecute, and, as the statute gives no appeal in cases of this kind, but provides that the party aggrieved may file his exception to any ruling of the court, in any matter of law, apparent upon, or brought upon the record by such exception, and also provides the mode in which they may be heard here, that that mode is the only one by which the party can be relieved from any errors in law happening in the trial below, — that his only remedy is by bill of exceptions.

This point may require a careful consideration. The provis-

ions of the act referred to, empowering this court to grant new trials for the causes therein stated, in substance, as it now stands in the Revised Statutes, have been in force for much more than half a century. Under them, the party might apply for a new trial at any time within one year after the judgment should have been rendered. Down to the year 1848, every party aggrieved by any judgment of the court of common pleas, rendered in any action originally brought there, might appeal to this court, by which all questions, both of law and fact, were open here, provided the appeal were taken within five days after the rising of the court. During all that time, it was not doubted that new trials might be granted for the causes stated, provided the petition therefor were filed within one year, notwithstanding the right of appeal, if the time of appeal were passed.

In June, 1848, the right of appeal was in a large class of cases taken away ; and in such cases the right to be heard upon exceptions to the rulings of the court in matters of law only, was given ; the effect of which was to deny an appeal in matters of fact, but to retain it in matters of law. The provision of the statute for granting new trials has, however, remained the same, including not only cases by law appealable, but cases not appealable, but in which the right to be heard by exceptions was given. Whether, therefore, the party has a right to appeal, or only to except in matters of law, the provision for granting new trials is the same ; and the party may have it, for any of the causes there stated, at any time within one year after judgment rendered ; and there is no exception in case the party has the right to appeal, and omits to do so ; or where he has a right to except, and omits to do so.

If the position of the respondents be correct, no such petition could be preferred, and no trial or new trial granted, in any case where the right of appeal existed, at least for any cause known to exist before the time of appeal had passed, and could not be, for any cause, even for which new trials are usually granted at common law, except for newly discovered evidence. The language of the statute is much too broad for any such limited construction.

The only plausible ground upon which the respondents can stand is, that where exceptions are taken, the statute declares that the party shall give bond, and enter his case at the next term of the supreme court; not that he *may*, but that he *shall* so enter it. But the provision is the same in case of appeal; that the appellants shall give bond, and shall file the reasons of appeal at the next term of the supreme court. We cannot, therefore, distinguish the cases, or deny the right of the applicants in this case, to petition for a new trial, notwithstanding their failure properly to bring up their exceptions.

It becomes necessary, then, to consider the merits of this petition for a new trial, and to examine the grounds upon which it is claimed. The proceeding in this case is for the enforcement of a lien, alleged to have been created by the parties upon the premises described in the original petition.

The first question raised is, whether the estate upon which the lien is claimed is sufficiently described. Of this we have no question. The property is described as " The Manchester Print Works," formerly called the " Arnoldville Print Works," bounding them particularly, and as containing " six and a quarter acres," &c. There is no difficulty in ascertaining what the subject is in which the petitioners claim a lien. It was objected, that there is no particular description of the interest or estate which the respondents had in the premises described. This does not seem to be required by the statute regulating these proceedings. The act requires only, that the petitioners should give notice, — name the individuals against whose interest in the premises they intend the lien should be enforced, but does not require any particular statement of what that interest is, whether for life, for years, or in fee.

The judge held, also, that upon the construction of the written contract submitted by the petitioners, which it was the sole province of the judge to construe, the contract for the work done by them, and under which it was done, was the sole contract of Patterson, one of the respondents; and as the petitioners claimed a lien for work done under the joint contract of Schroeder and Patterson, they had not submitted any proof of such work as alleged, and so had entirely failed

to support their allegation. If the judge was right in this, the petitioners were properly nonsuited. Every party is bound to prove every substantial allegation made by him. The petitioners set forth, and allege a lien created by a joint contract of two; they prove only the sole contract of one. The debt proven is not the debt alleged. They propose to show a lien for something else than that which is alleged.

Was the judge right in holding, that upon the proper construction of several written contracts, the contract under which the work was done was the sole contract of one only of the respondents? The contract for furnishing the materials and performing the work for which the lien is here claimed, was originally made with the petitioners by Schroeder alone; but by a subsequent contract between them and Schroeder and Patterson, Schroeder was to transfer all his, Schroeder's interest in this contract, all power to claim the fulfilment thereof by the petitioners and all interest in the property to be ceded to Patterson, and to be relieved from all obligation upon it and all liability in relation to it, except a mortgage lien for a certain amount; and Patterson, with the assent of the petitioners, assumed all obligation under the contract, and thereby became substituted to Schroeder in this contract, and Schroeder discharged. There was no evidence offered of any other contract for the performance of the work than that contained in the written agreement referred to, and no evidence of any liability of Schroeder for the work done, as the copartner of Patterson, sufficient for the jury to weigh. The substance of the evidence submitted by the petitioners was, that Schroeder was not a copartner of Patterson at the time of the substitution of the latter for him in the contract with the petitioners; but it was agreed that he was to become a copartner when his debts were settled, which time never arrived.

Although the petition for new trial is properly before us, it must, because it discloses no error in the judge who disposed of the cause below, be dismissed with costs.